```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
MICHEL TOLIVER,                         :    10 Civ. 7798 (RJS) (JCF)
                                        :
                Plaintiff,              :       REPORT AND
                                        :       RECOMMENDATION
     - against -                        :
                                        :
THE CITY OF NEW YORK, DEPARTMENT        :
OF CORRECTIONS, COMMISSIONER OF THE:
DEPARTMENT, CHIEF OF THE                :
DEPARTMENT, WARDEN OF G.R.V.C.,         :
CAPTAIN MERCED #211, CAPTAIN MAKAS,:
CORRECTIONS OFFICER ALMANZAR,           :
CORRECTIONS OFFICER JOHN DOE,           :
CORRECTIONS OFFICER TAPIA #12362,       :
OFFICER MACADLE #17893,                 :
                                        :
                Defendants.             :
- - - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:

On September 7, 2010, Michel Toliver, proceeding pro se, filed a complaint against the City of New York (the "City"), the New York City Department of Correction (the "DOC"), the Commissioner of the DOC, the Chief of the DOC, the Warden of the George R. Vierno Correctional Center at Rikers Island (the "GRVC"), Captain Merced, Captain Makas, Correction Officer Tapia, and Correction Officer McArdle[1] pursuant to 42 U.S.C. § 1983, asserting claims of

---

[1] The plaintiff has not supplied the first name of any individual defendant. Although Mr. Toliver names officer "Macadle" as a defendant in his complaint, the City identifies this individual as Correction Officer McArdle. (Defendants' Supplemental Memorandum of Law in Further Support of Their Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) at 2). Additionally, although Correction Officer Almanzar is identified in the complaint, he has

1

harassment and retaliation while in DOC custody. He seeks monetary damages of $1,000,000 as well as injunctive relief. The defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that the motion be granted.

Background

On September 4, 2010, Mr. Toliver was incarcerated in the GRVC. (Complaint ("Compl.") at 2, 3). Between 1:30 and 2:00 p.m. that day, he alleges that he was sleeping in his cell when Officer McArdle woke him and asked him if he "enjoyed being dirty and not eating and not using the phone or showering." (Compl. at 3). Mr. Toliver alleges that five minutes later Captain Merced and Officer Tapia joined Officer McArdle, along with Officers Almanzar and Doe; they surrounded his cell and made derogatory statements to him, calling him a "homo snitch." (Compl. at 3). He further claims that Officer Tapia, after referencing another case Mr. Toliver had filed, asked him if he wanted a shower and told him that the officers were present "to make sure [he] got what's coming to [him] like a few broken bones." (Compl. at 3). When Mr. Toliver refused to go take a shower, Captain Merced allegedly knocked on the

---

not been served and is not yet a party to this action. (City Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) at 2, n.1).

window, telling him: "We are here to break a few bones -- I mean to make sure you get a shower."  (Compl. at 3).

Subsequently, Captain Merced allegedly said, "Let's extract his fucking ass," and Captain Makas stated, "We will say you got a use of force assault on staff and you are going to get rearrested." (Compl. at 3(2)).  Mr. Toliver claims he responded by telling the officers that he knew it was the weekend and there was nothing he could do, but that they were harassing him and he would generate another lawsuit based on their threats.  (Compl. at 3(2)).  Captain Merced allegedly responded, "Do it!," at which point Officer Doe opened the plaintiff's cell door and threw two razor blades inside his cell, one of which landed on the bed and the other on the floor.  (Compl. at 3(2)).  Captain Makas and Captain Merced then allegedly screamed "Crack 16 cell!," and Mr. Toliver picked up the razors and flushed them down the toilet.  (Compl. at 3(2)).  The plaintiff claims that the officers then left and did not enter his cell, but that the entire incident is caught on camera.  (Compl. at 3(2)).

Mr. Toliver does not allege any physical injuries from the incident but claims that he fears for his life based on this and other interactions with GRVC officers,[2] and he requests that their

---

[2] Mr. Toliver specifically alleges that "almost every day, Captain Merced does something or causes something illegal to occur to me"

3

actions "please be stopped." (Compl. at 3(3)). He also seeks a hearing to "re-establish his status" (Compl. at 5), and "damages for the defendants['] willful and malicious conduct in confining plaintiff to punitive segregation and denying basic human rights to Due Process" (Letter of Michael Toliver dated June 4, 2011 ("6/4/11 Letter") at 20). Mr. Toliver claims to suffer from "emotional and mental stress and anguish," including "panic attacks, nightmares, and extreme paranoia," resulting from the incident. (Compl. at 3).

At the time that the defendants moved to dismiss the Complaint, this case had been referred to the Honorable Ronald L. Ellis, U.S.M.J. When Judge Ellis ordered Mr. Toliver to respond to the motion, the plaintiff did so by submitting a document captioned as an "Amended Complaint." Notwithstanding its title, this document is effectively the original Complaint annotated in response to the arguments raised by the defendants. Therefore, this Report addresses both the plaintiff's original Complaint and the arguments asserted in his "Amended Complaint."

---

(Compl. at 3(3)), and that the GRVC Warden, the DOC Commissioner, and the DOC Chief are aware of Captain Merced's actions but have done nothing to remedy the situation (Compl. at 5). Moreover, he claims that GRVC officers violate his rights on the weekends when outside agencies are closed and when the inmates are the most vulnerable. (Compl. at 3(3)).

4

Discussion

    A. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004). A complaint need not contain detailed factual allegations, but it must contain more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8. Id. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Erickson, 551 U.S. at 94). In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)

(quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. See Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997); accord Honig v. Bloomberg, No. 08 Civ. 541, 2008 WL 8181103, at *4 (S.D.N.Y. Dec. 8, 2008), aff'd, 334 Fed. Appx. 452 (2d Cir. 2009).

    B. Potential Relief

        1. Compensatory Damages

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Here, Mr. Toliver does not allege any physical injury in his complaint, and he acknowledged in a letter to the Court that he did not suffer any such injuries "in connection with this docket number" (Letter of Michel Toliver dated March 17, 2011 at 2). Thus, he is barred from obtaining compensatory damages. See Thompson v. Carter, 284 F.3d 411, 417-18 (2d Cir. 2002).

        2. Injunctive Relief

    Mr. Toliver's claims for declaratory and injunctive relief are

6

likewise precluded.

> Plaintiffs seeking injunctive relief must establish . . . standing, namely a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal conduct." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).  In other words, plaintiffs asserting an injunction claim must allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right. See Lyons, 461 U.S. at 105-06.

Roe v. City of New York, 151 F. Supp. 2d 495, 501-02 (S.D.N.Y. 2001); see also Shain v. Ellison, 356 F.3d 211, 216 (2d Cir. 2004) ("[A] plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent." (emphases omitted)).

Typically, Lyons' stringent immediacy requirement renders moot any claim for injunctive relief where the plaintiff is not under active threat of repeated violation; however, there is an exception for cases that are "capable of repetition, yet evading review." United States Parole Commission v. Geraghty, 445 U.S. 388, 398-99 (1980).  Such cases arise where "the plaintiff demonstrates that the injury to him will persist, even though the source of the injury has subsided for the moment." Jobie O. v. Spitzer, No. 03 Civ. 8331, 2007 WL 4302921, at *14 (S.D.N.Y. Dec. 5, 2007).  This exception applies "only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that

he will again be subjected to the alleged illegality." Lyons, 461 U.S. at 109. Courts in the Second Circuit have applied this exception in a limited number of instances where the plaintiff has demonstrated both (1) prior injury as a result of the complained-of policy and (2) a high likelihood of being subjected to the policy again. See, e.g., Mental Disability Law Clinic v. Hogan, No. 06 CV 6320, 2008 WL 4104460, at *7-8 (E.D.N.Y. Aug. 29, 2008) (finding standing for plaintiff with persistent mental illness to challenge involuntary inpatient treatment procedures of hospital under which she had been hospitalized); Lake v. Speziale, 580 F. Supp. 1318, 1326-28 (D. Conn. 1984) (holding plaintiff who had twice been incarcerated for contempt for failing to meet child support obligations had standing to seek injunction requiring courts to advise defendants in civil contempt hearings of right to counsel).

Here, Mr. Toliver is no longer in the custody of DOC, but is now incarcerated in a state correctional facility. Accordingly, there is no substantial likelihood that he would again be subjected to violation of his rights by the defendants in this case, and his claims for injunctive relief must be dismissed. See Belmar v. Schriro, No. 09 Civ. 10312, 2011 WL 832863, at *4 (S.D.N.Y. March 3, 2011) (dismissing injunctive claims against DOC where inmate had been transferred to state custody).

### 3. Nominal and Punitive Damages

By contrast, the plaintiff's claims for nominal and punitive damages are not barred, either by the PLRA or by the fact that he is no longer in DOC custody. See Thompson, 284 F.3d at 418 (holding that PLRA limitation on compensatory damages does not preclude award of nominal or punitive damages); accord Abrea v. Nicholls, No. 04 Civ. 7778, 2011 WL 1044373, at *4 (S.D.N.Y. March 22, 2011); Lipton v. County of Orange, 315 F. Supp. 2d 434, 456-57 (S.D.N.Y. 2004). Accordingly, it is necessary to address the substance of Mr. Toliver's claims.

### C. Eighth Amendment Claim

Reading the plaintiff's Complaint liberally, he appears to assert that the defendants' alleged harassment of him constituted cruel and unusual punishment in violation of the Eighth Amendment. However, verbal threats alone are not actionable under Section 1983. See Hare v. Hayden, No. 09 Civ. 3135, 2011 WL 1453789, at *7 (S.D.N.Y. April 14, 2011); LaRocco v. N.Y.C. Department of Corrections, No. 99 Civ. 9759, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001) (finding that, although officer's threats caused plaintiff fear, they were not accompanied by physical injury and thus were not actionable under Section 1983); Harris v. Lord, 957 F. Supp. 471, 475 (S.D.N.Y. 1997) ("'Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state

9

a constitutional violation cognizable under § 1983.'" (quoting Jermosen v. Coughlin, 878 F. Supp. 444, 449 (N.D.N.Y. 1995)). Although the plaintiff cites to injuries that he suffered prior to September 4 in his opposition papers, those injuries involve different defendants, dates, and circumstances from the underlying incident here and are therefore irrelevant to his claims in this case. (See 6/4/11 Letter).

### D. Retaliation

Mr. Toliver also alleges that the defendants were retaliating against him. In order to prevail on a retaliation claim, a prisoner bears the burden of proving that (1) he engaged in constitutionally protected conduct, (2) prison officials took an adverse action against him, and (3) a causal connection exists between the protected speech and the adverse action. Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); see also Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004). In this case, Mr. Toliver's filing of prior lawsuits against the defendants and other DOC personnel constitutes protected conduct. However, because the plaintiff only alleges that the defendants engaged in verbal threats, he has not asserted an adverse action sufficient to support a retaliation claim. See Taylor v. Conway, 381 Fed. Appx. 40, 41 (2d Cir. 2010) (concluding that inmate could not sustain retaliation claim because verbal harassment is not actionable under

10

Section 1983), cert. denied, __ U.S. __, 131 S. Ct. 1701 (2011); Johnson v. Brown, No. 09 Civ. 2, 2011 WL 1097864, at *6 (N.D.N.Y. March 22, 2011) (defendant's threat of planting contraband in plaintiff's cell, which never came to fruition, was insufficient to establish adverse action for purposes of retaliation claim); Bartley v. Collins, No. 95 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (finding, in retaliation cases, that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"); Cruz v. Hillman, No. 01 Civ. 4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that corrections counselor expressed dislike for inmates who file civil lawsuits and later came to plaintiff's cell and said "Green Haven is an open battlefield, so be careful" was insufficient to state retaliation claim). Accordingly, any claim for retaliation must be dismissed.

   E. Due Process

   Finally, Mr. Toliver attached to his complaint several pages alleging that he had been placed in punitive segregation without due process and subjected to other acts of retaliation for having filed another pending case, Toliver v. NYC Department of Corrections, 10 Civ. 822. That addendum, however, consists of a May 21, 2010 letter to the Court in the earlier filed case, and a copy of the letter is attached to the complaint in that case as

11

well. It is therefore appropriate for the claims raised in that letter to be dismissed from this case without prejudice to their being adjudicated in the earlier case.

Conclusion

For the reasons discussed above, I recommend that the defendants' motion be granted, the claims asserted in the body of the complaint be dismissed with prejudice, and the claims raised in the letter addendum be dismissed without prejudice to their being raised in 10 Civ. 822. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard J. Sullivan, Room 640, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

/s/ James C. Francis IV
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         August 30, 2011

12

Copies mailed this date:

Michel Toliver
10-A-4565
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York  12589

Joseph A. Marutollo, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York  10007